LIBBIE SPANNOCCHIA, Appellant, *v.* FREDERICK W. LOEW and Another, as Executors, etc., of JACOB VANDERPOEL, Deceased, and Others, Respondents.

*Release of dower fraudulently obtained — remedy of the releasor — rescission of contract — return of amount received — proof of fraud required — compromise, how far conclusive.*

Where the release of her inchoate right of dower has been fraudulently obtained from a married woman and a certain sum has been paid her in consideration therefor, she has three remedies. She may sue for the deceit, admitting that she has received such sum and keep it, stating that the right she parted with was worth much more, and upon proof thereof she can recover whatever amount of damages the evidence shows would make her as well off as if she had not been defrauded, or she may sue in equity to rescind, offering in her complaint to repay such sum and tendering it on the trial, or she may bring her action at law for an admeasurement of dower, in which case she must pay back or tender the amount received upon the trial thereof.

The general rule is that a party cannot rescind a contract for fraud without restoring whatever has been received under it. The exceptions to the rule are:

*First.* In equity where it appears that the party seeking relief was bound to pay some unascertained amount before the relief could be granted, in which case it is not necessary to pay or tender the amount before bringing suit; it is enough if the plaintiff offers in his bill to pay or perform whatever obligations rest upon him in that regard.

*Second.* If the particular sum in question was undisputably due the plaintiff it is unnecessary for the plaintiff to tender or return the money paid as, in any view of the case, so much would be due to him.

Where parties disagree the law favors a fair adjustment of their differences between themselves out of court, and it is only upon the clear showing that the party complaining has been over-reached by fraudulent means that the court's aid can be invoked to right the wrong.

APPEAL by the plaintiff, Libbie Spannocchia, from a judgment of the Supreme Court in favor of the defendants, entered in the office of the clerk of the county of New York on the 4th day of January, 1895, upon the verdict of a jury rendered by direction of the court after a trial at the New York Circuit, granting the defendants judgment against the plaintiff on the issues, upon the merits, with notice of an intention to bring up for review upon such appeal an order made at the New York Circuit on the 28th day of December, 1894, and entered in said clerk's office, granting the motion of the defendants for an extra allowance.

This action was brought for the admeasurement of dower and for the recovery of damages for its detention.

*John D. Townsend,* for the appellant.

*William Man,* for respondent George B. Vanderpoel.

*William V. Rowe,* for respondent Loew.

O'BRIEN, J.:

Jacob Vanderpoel was married to the plaintiff December 12, 1872, and he died in February, 1884. This action was commenced in March, 1893, against the executors of his last will and testament and others interested in the property by his wife Libbie Spannocchia (who, after his death, had married again), to compel admeasurement of her dower.

Prior to his death, and on June 1, 1881, Vanderpoel conveyed to Frederick W. Loew all his real estate. The plaintiff, in considera-

tion of $20,000, admitted to have been paid, released to her husband's grantee all her inchoate right of dower in the real estate by sealed release, duly acknowledged on June 2, 1891. In March, 1883, a suit for limited divorce was brought by plaintiff against her husband, and an agreement was made between her then attorney (who is the same person that represents her in this action) and Mr. Loew, representing the husband, by which it was agreed that she was to bring an action for absolute divorce, to which no opposition was to be made, and in which she was to receive $10,000 in lieu of alimony and of all claims that she had or might have against Vanderpoel or his property, and in addition that her attorney was to receive $1,500 for his fees and expenses, and that upon such payment she should "give to the said Jacob Vanderpoel a general release from all claims and demands which she or her heirs or assigns have or may have against the said Vanderpoel or his property." The agreement also provided for making irrevocable a power of attorney theretofore given to Mr. Loew, so as to authorize him "to act in her stead in all matters in which she has or had any interests in common with her husband growing out of their married relations." This agreeement was carried out; she got an absolute divorce on June 29, 1883, and received her $10,000, and her attorney the $1,500 as agreed, and she executed on the back of the old power of attorney a declaration dated July 11, 1883, that for value received she made it irrevocable, and she gave a general release to Mr. Vanderpoel. In 1892 she brought suit against Mr. Loew for damages, alleging that she had been induced, through fraud and misrepresentations, to sign the release of dower to the realty conveyed by Vanderpoel to Loew in June, 1881. On March 6, 1893, this suit was compromised by the payment of $500 in settlement and the execution of a release to Mr. Loew of the cause of action, and on the same day upon which the suit was compromised, viz., March 6, 1893, the summons in this action was dated and the complaint verified.

Upon the trial it was admitted that of the moneys thus paid to plaintiff, which included the $20,000 received by her upon the execution of the original release of dower to the defendant Loew on June 2, 1881, the $10,000 and $1,500 paid in connection with the divorce suit, and the $500 paid by Loew in settlement of the action

against him, none was either tendered or returned, nor did the plaintiff make any offer to return any or all of such sums　After these various releases of dower and other documents were introduced by the defendants and the latter had rested, plaintiff sought in rebuttal to attack them on the ground that the defendant Loew had procured them by fraud, the claim made by counsel being that he had evidence tending to prove that the defendant Loew had misrepresented to the plaintiff the value of Jacob Vanderpoel's property and his wealth and the nature of the instruments which he had induced her to sign; but such testimony was objected to, and in the oral opinion sustaining such objection the learned trial judge, among other things, said :

" In 1883, when she brought her action for separation, Mr. Vanderpoel and she having, as I understand the matter, been previously actually separated, and in her complaint in that action she alleged that she had been deceived as to the amount of his property, and that he was then the owner of some $700,000 worth of real estate, showing that at that time she had information upon the subject as to the amount of his real estate ; whether it was correct or not there is nothing before me to show. Then it appears that an agreement was entered into between Judge Loew and Mr. Townsend, representing the parties, which provided for a variety of matters, and, among others, it provided that she should receive $10,000 more, in addition to the $20,000 which she had received when she executed the first release, and that a divorce should be secured by her without opposition on the part of her husband in some State other than New York, and that her counsel should receive $1,000 for counsel fees and $500 for expenses. It appears that that agreement was carried out, with the difference that the divorce was obtained in this State by her, which was an absolute divorce on the ground of adultery, and, of course, entirely separated the parties for all legal purposes. Then it appears that the $10,000 was paid her, and the other sums agreed upon were paid, and at that time, in consideration of this arrangement, she executed a general release to Mr. Vandepoel himself of all claims and demands of every description whatever, including any possible claim for dower, although I do not remember whether dower was specifically mentioned or not. * * * Then it appears that nothing further was done, as I understand it, until the action

was brought in the Court of Common Pleas in the year 1893, in which it was set up in the complaint that she had given these releases as the result of fraudulent representations made to her by Judge Loew. In that action she demanded $150,000 damages because of these fraudulent representations. That action assumed the existence of the release and its validity and demanded damages because she had given it. It appears that that action was subsequently settled upon the payment of $500, and thereupon the plaintiff executed a third release to Judge Loew, releasing him from all claims of every sort and description. Thereupon a consent was made, and that action was discontinued, and immediately afterwards the present action was brought. Here are these three releases that have been given by the plaintiff : The original one of dower specifically to Judge Loew in 1881; the second one, in 1883, to Mr. Vanderpoel himself, after she had been divorced, which was a general release, and also a release of dower ; and, in the third place, a release to Judge Loew, in 1893, which was also a general release. Upon this state of facts the defense raises four objections to the admissibility of this testimony. The first one is that in this suit it is sought to avoid the effect of the Statute of Limitations because if an action was brought at the time this was brought to set aside these releases, it would have been barred by the Statute of Limitations ; therefore, an attack cannot be made upon these releases collaterally in this suit.

" The second is, that having received $20,000 in consideration of releasing her dower, she cannot maintain an action without restoring that $20,000.

" The third is, that having in the first suit which she brought in the Common Pleas elected, not only her remedy, but her right, and insisting that the release which she had given was in full force, and demanding damages because of the release, she cannot now, at least as against Judge Loew, insist that the release is void.

" Fourth, it is claimed that under the Revised Statutes she has made the election as to her dower. The statute provides that where any arrangement is made by a married woman, and that pecuniary provision is made, that she must elect within a year whether she will accept that pecuniary provision or whether she will stand upon her rights and claim her dower in the land ; and it is insisted that

she elected to take the pecuniary provision and has never returned it, and, therefore, she cannot maintain such an action as this.

. "As to the first ground of objection, my impression is that the point is not well taken. As to the third and fourth grounds, I am inclined to think that the objections are well taken, but it admits of argument pro and con as to those two points. But as to the second objection, it appears to me that there is no answer to it, at least I have heard none suggested, and I have not been able to think of any answer, that is, that before she can maintain this action she was bound to return the $20,000."

We have thus quoted at length from the views expressed by the court in disposing of the objection to the testimony offered by the plaintiff in rebuttal, because it contains a clear summary of the facts as they were then made to appear, and shows a clear apprehension on the part of the trial judge of the legal principles applicable thereto, and we might be well content to rest our affirmance upon his opinion, were it not that the principal ground upon which the ruling was claimed to be supported is strenuously assailed upon this appeal, and it is, therefore, necessary that we should supplement his views by a brief reference to the legal principles and the authorities which we think control.

As correctly said by one of the respondents, this is an action at law, not for damages for the claimed fraud or deceit, but for the identical thing released or sold. The plaintiff retains the consideration paid her and thereby affirms the sale, and yet sues to get the identical thing and the whole thing that was the subject of sale. Unless the release of dower is set aside, it is an absolute bar to any recovery of dower. If fraudulently obtained from her, she had three remedies. She might have sued for deceit, admitting that she got $20,000, and kept it, stating that the right she parted with was worth much more, and upon proof she could recover whatever amount of damages the evidence showed would make her as well off as if she had not been defrauded. She might have sued in equity to rescind, offering in her complaint to repay the $20,000 and tendering it on the trial. Or she could have brought her action at law, such as was here brought, for an admeasurement of dower, and whether in such action she should pay back or tender the $20,000 upon the trial. the authorities must determine.

At the time the release of dower was delivered the plaintiff was not entitled to any sum whatever, and what was paid her then was not in satisfaction of any absolute right or claim that she then had, but was given in consideration of the release and transfer of her inchoate and contingent right or claim for dower. This sale, settlement or release she seeks to repudiate upon the ground of fraud, claiming that she was entitled to dower in the lands, so that if she were permitted to recover without paying back or offering to refund what she had received, she would have both the land and the money.

The general rule is that a party cannot rescind a contract for fraud without restoring whatever has been received under it. (*Lee* v. *Vacuum Oil Co.*, 126 N. Y. 579, 586.) The exceptions to this rule are : *First.* In equity, where it appears that the party seeking the relief was bound to pay some unascertained amount before the relief could be granted, it is not necessary to pay or tender the amount before bringing suit; it is enough if the plaintiff offers in his bill to pay or to perform whatever obligations rest upon him in that regard. (*Zebley* v. *Far. Loan & Trust Co.*, 139 N. Y. 470.) *Second.* If the particular sum in question " was indisputably due the plaintiff, then it would have been unnecessary for the plaintiff to tender or return * * * the money paid, because in any view of the case so much would have been due the plaintiff." (*Gould* v. *Cayuga Co. Nat. Bank*, 86 N. Y. 75; *Kley* v. *Healy*, 127 id. 555.)

Whether the plaintiff was entitled to the benefit of this second exception is to be determined by the answer to be furnished to the query whether in any event she was entitled to retain the $20,000 paid her at the time the release sought to be set aside was delivered. The action is to obtain an admeasurement of plaintiff's dower or to have set apart her interest in the land ; and she would not be entitled to both that relief and any sum equal to or in excess of the $20,000 paid her. Therefore, under the general rule she would be required to refund what she had received under the contract which she seeks to have rescinded for fraud.

It will thus be seen that we concur in the conclusion reached by the learned trial judge, and leave undisposed of the other questions which are serious obstacles to plaintiff's right to maintain this action.

That little weight is to be attached to the claim that her knowledge of the deception practiced upon her in misstating the amount of Mr. Vanderpoel's wealth was but recently obtained, is shown by the fact that in her verified complaint in March, 1883, ten years before the commencement of this action, she alleges that Vanderpoel " is a man of very large fortune, as the plaintiff believes, being worth at least the sum of $700,000." And she therein further alleges that she was " induced to sign off her dower right in all the defendant's (Vanderpoel's) estate nominally for the sum of $20,000, but in reality for the sum of $10,000." It was subsequent to verifying such complaint that, with the assistance and advice of her present attorney, she entered into the agreement relating to her obtaining an absolute divorce and receiving for herself the $10,000 and for her counsel the $1,500, which agreement was fully carried out by the payment of the sums named and by her giving, as she had agreed to do, another release of all her claims against her husband's property.

If the maxim that there should be an end to litigation can ever be invoked this would seem an eminently proper case for its application. Not content with her former steps, and claiming to have been defrauded, she elected after an interval of years to sue Mr. Loew personally for damages for such fraud, which action, as shown, was compromised and settled on the very day that this present action was commenced. We do not think it can be seriously contended that the plaintiff has not had her day in court, or has not had the advice and assistance of competent counsel, because it is made to appear that by shifting her position she has succeeded up to the present time in obtaining three different settlements, which apparently have no other force or effect upon her than to whet her appetite for additional litigation ; and if this action can be maintained, we fail to see when there is to be an end to the dispute between this plaintiff and the estate of her former husband. Where parties disagree the law favors a fair adjustment of their differences between themselves out of court, and it is only upon a clear showing that the one complaining has been overreached by fraudulent means that the court's aid can be invoked to right the wrong. But where as here the plaintiff urges her claims through the same attorney that conducted the negotiations for her leading up to the settlement from which she obtained pecuniary compensation, and

after the lapse of years, during which with knowledge she rested upon her rights, she does not make a showing commending her to the favorable consideration of the court.

We think upon the merits that the disposition made by the trial judge was right, and that the granting of the full allowance was a proper exercise of discretion, because warranted by the extraordinary character of the action, and justified by the only conclusion to be drawn from the facts, that the plaintiff, without any just cause of complaint, speculated upon the chances of a recovery, and having lost, should, as all other suitors in similar actions, pay the penalty.

Judgment accordingly affirmed, with costs.

VAN BRUNT, P. J., and PARKER, J., concurred.

Judgment affirmed, with costs.