(17 Misc. Rep. 691.)

NATIONAL BANK OF COMMERCE et al. v. BANK OF NEW YORK et al.

(Supreme Court, Special Term, New York County.   July, 1896.)

1. TRUSTS—DISTRIBUTION OF FUND—PLEADING.
    A complaint for the distribution of money in the hands of trustees is sufficient where it alleges that premises were purchased by the trustees, the price being paid by plaintiff and others; that the object for which the premises were bought has been accomplished; that the premises have been sold by the trustees who hold the fund arising from the sale; and that plaintiff is entitled to a share of the fund.

2. DEFECT OF PARTIES—WHEN GROUND FOR DEMURRER.

A demurrer for defect of parties defendant, because a clearing-house association was not joined, referred to in the complaint, will not lie where the complaint does not show that such association was a "person" capable of being sued.

Action by the National Bank of Commerce in New York and others against the Bank of New York and others. Defendants demurred to the complaint. Overruled.

Benjamin D. Silliman, Frederic A. Ward, Wm. B. Putney, Michael H. Cardozo, and James L. Bishop, for plaintiffs.

Bristow, Opdyke & Wilcox (Joseph H. Choate, William S. Opdyke, and David Wilcox, of counsel), for defendants.

TRUAX, J.   Certain of the defendants demur to the complaint on the grounds: First, that it does not state facts sufficient to constitute a cause of action; and, secondly, that there is a defect of parties defendant in the omission of the Clearing-House Association, mentioned in the complaint.

Section 488 of the Code of Civil Procedure says that the defendant may demur to the complaint where it appears upon the face thereof that there is a defect of parties defendant. I cannot find anywhere in the complaint that there is any such entity as the Clearing-House Association. It is alleged in the third paragraph of the complaint that the Bank of New York and certain other banks were associated for the purpose of a clearing-house association, to effect and facilitate their exchanges as a part of the business conducted by each of said banks severally; and in the seventh paragraph of the complaint it is alleged that the persons constituting said Clearing-House Association (referred to in a certain instrument dated December 16, 1874, which instrument is set up in full in the complaint) were the plaintiffs and said original associates. The Clearing-House Association is mentioned in the eleventh paragraph of the complaint, and the New York Clearing-House Association is mentioned in the twelfth paragraph thereof; but nowhere in the complaint is it alleged that there is a legal body known as the Clearing-House Association or the New York Clearing-House Association that can be sued. The complaint indicates that certain banks have made an agreement to do certain business in a certain way, but the terms of the agreement are not set forth in the complaint, and there is nothing to show that a "person" who could be sued was created by said agreement. The second demurrer is overruled.

The complaint alleges that on or about the 15th day of September, 1874, the plaintiffs and certain of the defendants were associated for the purpose of a clearing-house association, to effect and facilitate their exchanges as a part of the business conducted by each of the said banks severally, which said banks are designated in the complaint as the original associates, and that at said time the said original associates owned and were in possession of the sum of $100,146.52, which they severally had contributed to and for the purpose of said clearing house, and that no person or corporation other than the said original associates had contributed any-

thing to or was interested in the said fund, or any part thereof; that on said day it was agreed by and between the said original associates that they should contribute ratably towards the purchase of premises which could be used as a clearing house for them, and that in pursuance of said agreement the said original associates contributed their respective shares in the said fund of $100,146.52, and also a certain other sum which was equal to three-tenths of 1 per cent. of the capital stock of the said original associates, towards the purchase of certain premises mentioned and described in the complaint; that none of the defendants other than the original associates contributed anything towards the purchase price of said premises, or towards the increase of the value of said premises; that in pursuance of and to carry into effect said last-mentioned agreement, the defendants Coe and Tappan, with three other persons since deceased, did, on behalf of the said original associates, purchase certain premises, mentioned and described in the complaint, as joint tenants, and not as tenants in common, with the money so raised as aforesaid, which constituted the total funds belonging severally to the said original associates, and was furnished solely by the original associates for the purchase of said premises, and for the improvement thereof, and that no part of said purchase money was contributed by the grantees named in the deed; that upon the purchase of said premises said Coe and Tappan and others named in the deed executed and delivered to the said original associates an instrument in writing to the effect that the premises mentioned in said deed had been conveyed to them as joint tenants: that they had no personal interest in said purchase or property; that the consideration for said premises had been paid by the said Clearing-House Association, and that they held the same for the use of said Clearing-House Association, subject to its disposal at any time; that the persons constituting said Clearing-House Association referred to in the last-mentioned instrument were the original associates, and no others; and that by virtue of said conveyance and said instrument the whole beneficial interest, title, and estate in said premises vested forthwith in said original associates as tenants in common in proportion to said several contributions to the said purchase price of said premises, and that "it was contemplated and understood" by the said original associates at the time of the payment of said money and purchase of said property that each of said original associates should have a beneficial interest in said property in proportion to the amount of its several contribution thereto; that immediately after the purchase of said premises the said original associates took possession thereof, and thereafter occupied a portion thereof for the purpose of a clearing house, and subsequently permitted the use thereof by other banks which became members of the Clearing-House Association in connection with themselves; and that the portion of the building not occupied for the clearing house was rented by the trustees above named, who received the rentals thereof; and that the expenses of the clearing house, except certain expenses for printing, were paid by an assessment of $200 on each bank, and the balance necessary after that amount was paid pro rata, according to the average amount

which each bank sent to the clearing house for the preceding year for exchange.

The complaint further alleges that three of the persons named as grantees in the deed above mentioned died on or before the 2d day of November, 1887, and that on said day Frederick D. Tappan and George S. Coe, the only surviving grantees mentioned in the aforesaid deed, executed and delivered a certain deed of the above-mentioned premises unto Frederick D. Tappan, George G. Williams, George F. Baker, William A. Nash, and George B. Coe, as joint tenants, and not as tenants in common, and to the survivors and survivor of them and their heirs and assigns forever; that contemporaneously with the execution and delivery of said deed the grantors therein named made, executed, and delivered a certain instrument in writing by and in which they declared, among other things, that they had no personal interest in the said property, but held the same for the use and benefit of the several banks which composed the Clearing-House Association on the 16th day of December, 1874, or their assigns, according to their several contributions towards the said purchase money, and subject to their disposal at any time; that between the date of the purchase of said premises in December, 1874, and the 2d day of November, 1887, several banks, in addition to the original associates, had become members of the Clearing-House Association, but had contributed nothing towards the purchase money of the premises, and had acquired no interest therein.

The complaint further alleges that since the purchase of said premises certain of the original associates (naming them) have ceased to do business, and have assigned their respective interests from time to time to such banks as constituted the Clearing-House Association at the times the said several assignments were made; that the said premises have been used in part by the said original associates and such banks as thereafter became associated with them as a place for the making of exchanges, and that the defendants Tappan, Coe, Williams, Baker, and Nash have, since the said property was conveyed to them, made leases of other parts thereof, and have received the rents and income thereof; that said premises are no longer used as a place for making exchanges by the several banks connected with the New York Clearing-House Association, or for any purpose for which they were conveyed to the defendants last above mentioned; that the said Tappan, Coe, Williams, Baker, and Nash have sold said premises, and have received therefor the sum of $725,000; that they refuse to recognize the exclusive right of the original associates and their assigns in and to the entire proceeds derived from the sale of said premises, and have refused to pay over to the plaintiffs and to the other original associates and their assigns their respective shares in the proceeds of said premises, and have asserted, and still assert, that they will not distribute the said fund between the plaintiffs and the other original associates and their assigns exclusively, unless compelled so to do by some court; that they are equitably bound and should be required to transfer the proceeds of said sale to the said original associates according to their respective rights and interests therein, and to account to the orig-

inal associates for their proceedings concerning the same, and that no action has ever been taken to effect the legal and permanent organization of the Clearing-House Association.

The complaint further alleges that certain of the defendants (naming them) claim to have some interest in or to the said premises and to the said fund derived from the sale thereof. The judgment demanded is that the original associates and their assigns be adjudged and declared to be entitled to the entire beneficial interest, title, and estate in the said premises, and to the rents, issues, and profits thereof; that they and their assigns be adjudged entitled to the fund derived from the sale of the said premises according and in proportion to their respective contributions towards the purchase money therefor; that certain of the defendants (naming them) be adjudged to have no interest in or to said fund, or to any part thereof, except such interest as they may have acquired by assignment from some of the original associates; that the defendants Tappan, Coe, Williams, Baker, and Nash account for the rents, issues, and profits of said premises, and be directed to pay over the same, together with the proceeds derived from the sale of said premises, to the original associates and their assigns according to their respective rights and interests, and that the rights of the plaintiffs and each of the defendants in and to any and all property held by them may be adjudged and determined, and that such an accounting and distribution may be had as may be necessary for the determination and enforcement of the rights and interests of the plaintiffs, and for such other and further judgment and relief as may be just.

Eight of the nine defendants who demur are mentioned and described in the complaint as among the original associates. The other defendant demurring, namely, the Chase National Bank, the complaint alleges, is one of those defendants who has, or claims to have, "some interest in or to said premises, and to the funds derived from the sale thereof."

The demurrer is a several one; that is, each of the defendants above named demurs on the ground that the complaint does not state facts sufficient to constitute a cause of action against it. The demurrer of the Chase National Bank must be overruled, if any cause of action is stated against it in the complaint. By demurring, the said defendant admits the allegation that it claims to have some interest in or to the premises mentioned in the complaint and to the fund derived from the sale thereof. To use the words, slightly changed, used by the court of appeals in the case of Townsend v. Bogert, 126 N. Y. 376, 27 N. E. 555, if the interest of the defendant the Chase National Bank is of a nature not subject to trial in this action, it may plead the facts in its answer, and upon the trial seek a dismissal of the complaint as against itself; or it may safely disregard the action entirely, since no personal judgment is sought against it; or it may answer showing that its presence is not essential, and ask to have the complaint dismissed as to it,—and so its rights will be perfectly preserved without leaving the plaintiff to blunder in the dark to an imperfect remedy.

But, does not the complaint state facts sufficient to constitute a

cause of action against the demurring defendants? In answering that question it is to be borne in mind that it is not sufficient to sustain a demurrer to the complaint on the ground that it does not state facts sufficient to constitute a cause of action that the facts are imperfectly or informally averred, or that the complaint lacks definiteness or precision, or that the material facts are argumentatively averred; but that the complaint will be deemed to allege what can by reasonable and full intendment be implied therefrom. Marie v. Garrison, 83 N. Y. 14; Zebley v. Trust Co., 139 N. Y. 467, 34 N. E. 1067. It may be, as claimed by the defendants demurring, that the complaint fails to show that all the parties interested in the fund are joined as parties to the action, although I think the fair inference to be drawn from the complaint is that all such parties are made parties to the action; yet, if the complaint does so fail to show, the remedy is by demurring on the ground that there is a defect of parties plaintiff or defendant, and, if such objection is not taken, either by demurrer or answer, the defendant is deemed to have waived it. Code Civ. Proc. § 499. The defendants have not demurred upon the ground above stated, but have demurred upon the ground that there is a defect of parties, in that the Clearing-House Association has not been made a party to the action. By taking that specific objection, they waived all others.

It is perhaps unnecessary for me to say in this connection that, if it should appear on the trial that the court could not make a complete determination of the controversy without the presence of other parties, it would direct them to be brought in. Code Civ. Proc. § 452. The claim of the defendants demurring, as I understand it, is to the effect that it appears upon the face of the complaint that the purpose for which the purchase money of the premises mentioned in the complaint was contributed by the original associates was not for the acquiring of that particular property, but that such money was raised as a general building fund for the Clearing-House Association, and that any newcomer into that association, although contributing nothing towards the fund, was jointly interested with the original associates; that the purpose of the contribution survived the sale of the premises, and continues for the benefit of the association at large. as distinguished from the contributors, and that, as all the members of the association are jointly interested, there is no personal right in the plaintiffs and the other original associates to demand a separation of the fund resulting from the sale of said premises. I do not so understand the complaint. As I understand it, it alleges that certain persons, acting as trustees for certain banks, designated the "original associates," purchased in trust for these banks, with money contributed by them, certain premises, to be used for the purposes of a clearing-house association, to effect and facilitate their exchanges as a part of the business conducted by each of the said banks severally; that said trustees have sold said premises, and that said premises are no longer used for the purposes aforesaid, and that said trustees have the proceeds of the sale thereof in their possession; that they refuse to account for the same, "and that no other person or corporation other than the said original associates

has contributed anything to or has any interest in the said fund, or any part thereof." Now, if the object for which the premises mentioned in the complaint were purchased has been accomplished, if they have been sold, and there is in the hands of the persons who are acting as trustees a fund arising from such sale, and if no other person or corporation other than the original associates is interested in said fund, or any part thereof, it seems to me that the plaintiffs are entitled to the relief demanded in the complaint.

Whether the trust on which the property was held was or was not recognized by the Revised Statutes is immaterial. The trust was not a secret one. It was declared by another instrument in writing, and therefore is not within the provision of 1 Rev. St. p. 728, § 51, which declares that, "where a grant for a valuable consideration shall be made to one person and the consideration thereof shall be paid by another, no use or trust shall result in favor of the person by whom such payment shall be made, but the title shall vest in the person named as alienee." Woerz v. Rademacher, 120 N. Y. 62, 23 N. E. 1113. The effect of the transaction was that the legal and equitable title to the premises was in the 59 banks who were known as the "original associates" as tenants in common, and the five individual grantees had no title to the property, but had at most a power in trust to sell and distribute the proceeds among those who held the legal and equitable title. They have sold the premises; they should distribute the proceeds.

The demurrer is overruled, with leave to the defendants to withdraw the demurrer, and answer, on payment of costs. Ordered accordingly.